Ghqlson, J.
According to the decision in House v. Elliott, 6 Ohio St. Rep. 497, which applies in this case, we can not inquire as to the weight of evidence on which any finding of fact was made in the court below. The finding must be against law. Assuming every fact which the evidence may tend to prove, in support of the finding and judgment of the court below, do those facts fail to establish the right of the plaintiff in the action to recover ? We need not, therefore, say whether there was sufficient evidénce to show that Johnson, to whom the goods were sold, was insolvent. There was; we think, evidence tending to show the insolvency of the ven *518 dee at the time of the sale of the goods, and that such insolvency was not known to the vendor. The question then arises, whether the vendor, on afterward hearing of the insolvency, may exercise the right of stoppage in transitu, or, whether, as claimed by counsel for the plaintiff in error, the insolvency, to authorize a stoppage in transitu, must be evidenced by some positive overt act, the existence of which is not inferable from any testimony in the bill of exceptions,- .and that such overt act must occur after the sale, and before the delivery of the goods ?
It is the rule of the mercantile law, that where goods have been consigned, and are on transit to the vendee, the consignor can not vary the consignment, except in the case of insolvency. It has been said, that “ the mischief and inconvenience that would ensue on a contrary supposition, are extreme. The goods might be put on board, and might lie at the risk of the consignee for two or three months ; and if the consignor could come and resume them at pleasure, it would place the consignee in a situation of great disadvantage, that he should be exposed to the risk during such a length of time, for an object which might be eventually defeated, at any moment, by the capricious or interested change of intention in the breast of the consignor. It would be to expose the con.-signee altogether to the mercy of the seller.” The Qonstaniia, 6 C. Rob., 321-827. In that case, the vendor had stopped .-and diverted the delivery of goods, and it was said, if the vendee “'had been an insolvent person, it would have amounted ■to a complete and effective revendication of the goods.. But if the person to whom they are consigned is not insolvent; if 'from misinformation or excess of caution, the vendor has exercised this privilege prematurely, he has assumed a right that did not belong to him, and the consignee will be entitled tc the delivery of the goods, with an indemnification for the expenses that have been incurred. * * * * It is not an unlimited power that is vested in the consignor, to vary the consignment at his pleasure in all cases whatever. It is a privilege allowed to the seller, for the particular purpose of protecting him from the insolvency of the consignee. Certainly it is noi *519 necessary that the person should be actually insolvent at the time. If the insolvency happen before the arrival, it would be sufficient to justify what has been done, and to entitle the shipper to the benefit of his own provisional caution. But if the person is not insolvent, the ground is not laid on which alone such a privilege is founded.” 6 C. Rob. 326. In the case of Wilmshurst v. Bowker, 2 M. & G. 792, 812, it was said by Tindal, C.J.: “ The ordinary right of countermanding the actual delivery of goods'shipped to a consignee, is limited to the cases in which the bankruptcy or insolvency of the consignee has taken place. The law as to this point is very clearly laid down by Lord Stowell, in the case of .The Qonstantia.”
This statement of the doctrine of stoppage in transitu, which is supported by such high authorities, does not sustain the proposition, that a vendee, insolvent at the time of the sale of the goods, and still remaining insolvent, can object to their stoppage in transitu. He could only complain when his insolvency was known to the vendor at the time of sale, and the contract was made in view of such, his condition. The object in allowing the privilege to the vendor being his protection against the insolvency of the vendee, such privilége, unless waived by the vendor, ought properly to extend to cases of insolvency, whether existing at the time of sale, or occurring at any time before the actual delivery of the goods. ■A vendee who disputes the right of stoppage in transitu, must be prepared to aver, as in the case of Wilmshurst v. Bowker, 2 M. & G. 792, which was an action by a vendee against a vendor for improperly stopping the delivery of goods, that he was neither bankrupt nor insolvent. Independently of any circumstances to the contrary, the vendee might have the benefit of a presumption of ability to comply with his contract, and the burden of showing insolvency might be cast on the vendor. It may be that this would be sufficiently shown by the proof of an overt act of insolvency, such as a stoppage of payment, though, in fact, an actual insolvency, in the sense of not having means adequate to the payment of debts, might not exist. If the vendee, before the stoppage in transitu, *520 had, by his conduct in business, afforded the ordinary apparent evidences of insolvency, he ought not to complain of the precautionary measure taken by the vendor, though it should turn out that he was ultimately able to pay. But, though no such evidences of insolvency should precede the stoppage in transitu, still, if the fact of insolvency existed, the vendee ought not to complain. This, at least, is clearly to be inferred from the language of the authority which has been cited, and appears entirely reasonable 'and proper. Fair dealing will be better insured by leaving to the vendor his privilege of stoppage in transitu, in all cases of insolvency, whether evidenced by the ordinary accompanying acts, or shown actually to exist. The rights of a fair vendee will be sufficiently protected by giving him an indemnity when the right of stoppage in transitu is exercised upon rumor or suspicion without any foundation in fact, and by depriving the vendor, in all cases, of any chance of speculating upon the goods, by requiring them to be delivered or accounted for to the vendee, or his assignee, on the payment or tender of the agreed price.
These views are sustained by the origin and nature of the doctrine of stoppage in transitu. It appears to have been derived from, or to be analogous to, the revendication of the civil law. This has been thus defined: “Revendication is the right of an unpaid vendor, upon the insolvency of the vendee, to reclaim, in specie, such part of the goods as remains in the hands of the vendee entire, and without having changed its quality.” (In re Westzynthius, 2 Nev. & Man. 650, note.) In Bell’s Commentaries on the Laws of Scotland, cited in the same case, it is said: “The privilege to stop goods in transitu, is a qualified extension in equity of that rule of mutual contract, by which, either party may withhold performance, on the other becoming unable to perform his part.” It is stated, as a rule introduced into the common law, in modern times, founded on principles of equity, and borrowed from the foreign or continental law, that in case of the vendee’s bankruptcy or insolvency, the vendor might stop and take back the goods in transitu, or before they come into the hands of .the vendee. Bell’s Comm, cited, 2 Nev. & Man. 651, 652, *521 Tiote; 15 Ves. 343. It is “nothing more than an extension of the right of lien, which, by the common law, the vendor has upon the goods for the price, originally allowed in equity, and subsequently adopted as a rule of law.” Rowley v. Bigelow, 12 Pick. 307, 313; Atkins v. Colby, 20 N. H. 154; Grout v. Hill, 4 Gray, 361. “ A kind of equitable lien adopted by the law for the purposes of substantial justice.” 7 T. R. 445. In the case of McEwan v. Smith, 2 Ho. L. Cas. 309, 328, it was said, by Lord Campbell, that “the doctrine of stoppage in transitu is a most just and equitable one, and I would by no means strive to limit its operation.”
If the true principle of the right of stoppage in transitu, he found in that certainly just rule of mutual contract, by which either party may withhold performance, on the other becoming unable to perform, on his part; if the foundation of the rule be a just lien on the goods for the price, until delivered, an equitable lien adopted for the purposes of substantial justice, then, it is the ability to perform the contract— to pay the price — which is the material consideration. If there be a want of ability, it can make no difference in justice or good sense, whether it was produced by causes, or shown by acts, at a period before or after the contract of sale. Substantially, to the vendor who is about to complete delivery, and abandon or lose his proprietary lien, the question is, can the vendee perform the contract on his part; has he, from insolvency, become unable to pay the price ? If such be his condition, and the vendor has not precluded himself by some act of waiver, the general principles on the 'subject and justice require that he should be allowed to exercise the right of stoppage in trausitu.
To sustain the contrary view and limit the right of stoppage in transitu, the case of Rogers v. Thomas, 20 Conn. 53, is relied on, in which it was decided, that to authorize the exercise of th« right of stoppage in transitu, there must be some overt act of insolvency, and that it must intervene between the sale and the exercise of the right. The decision in the case of Rogers v. Thomas, was not made on the authority of previous cases, but, in the absence of such cases, *522 upon the ground that the general definitions or statement? of the doctrine of stoppage in transitu required such a limit to the exercise of the right; and particular reference is made to the general statement of the doctrine in Smith’s Mercan tile Law, 547 (Am. Ed. 677). The very first authority cited by Mr. Smith to sustain his- statement of the doctrine, is the case of Wilmshurst v. Bowker, and he quotes the remarks of Tindal, C.J., as to the clearness 'with which the law on the point had been laid down by Lord Stowell in the case of The Oonstantia. ' Interpreting the statement of the doctrine, by Mr. Smith, in the light of the authorities he cites, and it is manifest that he never intended any.such limit to the exercise of the right of stoppage in transitu. Nor do we think the terms in which the doctrine of stoppage in transitu is stated in many of the authorities, would justify the limit supposed to exist.
It was said by Lord Kenyon, 3 T. R. 467, that “ the doctrine of stopping goods in transitu is bottomed on the case of Snee v. Prescot, where Lord Hardwicke established a very wise rule, that the vendor might resume the 'possession of goods, consigned to the vendee, before delivery, in case of the bankruptcy of the vendee.”
The doctrine is thus stated by Lord Hardivicke. After referring to the rule, that an action against a carrier for loss of goods should be brought in the name of the consignee, he proceeds : “ But suppose such goods are actually delivered to a carrier, to be delivered to A., and while the carrier is upon the road, and before actual delivery to A., by the carrier, the consignor hears A., his consignee, is likely to become bankrupt, or is actually one, and countermands the delivery, and gets them back in his own possession again, I am of opinion that no action of troyer would lie for the assignees of A., because the goods, while they were in transitu, might be so countermanded.’.’ 1 Atk. 248.
' In a case before cited it is said, by Lord Campbell: “ What is stoppage in transitu ? It is this, that where a vendor of goods has to send them to a vendee, and has, for that purpose, parted from them to a. carrier, he may, upon hearing of the *523 insolvency of the vendee, while they remain in the hands of the carrier, and, before delivery to the purchaser, stop their delivery.” 2 Ho. L. Case, 828.
In the case of Douath v. Broomhead, 7 Barr, 301, 303, it is said: “ The right of a vendor, on the discovery of the bankruptcy or insolvency of the party to whom he has sold goods on credit, to retake them before actual or complete delivery, is the well-settled doctrine of both courts of law and equity.”
In the case of Hays v. Mouille, 14 Pa. St. 48, the judge, in his charge to the jury (and his views were’ expressly adopted by the court of error), after stating that the insolvency of the vendee was the groundwork of the plaintiff’s claim, thus put the question — Was the vendee “ insolvent when these goods were replevied by the plaintiffs ? It is not necessary, to prove insolvency, that he should have been declared a bankrupt or insolvent by a judicial tribunal, nor that he should have made an assignment of his property. If the fact exist, no matter how proved, if sufficiently and satisfactorily proved, the law requires no more.” In that case the evidence tended to show that-the vendee was insolvent when the goods were bought, and the judge further said: “ You have the testimony of Baker that Rhodes was indebted some $60,000, and that his assets were but $26,000, and that his creditors were watching for these goods on the line of transportation, and actually attached them before they reached Ohio, for debts which he was not able to'pay.”
In the case of Stevens v. Wheeler, 27 Barb. 658, 663, there is this statement of the rules on the subject of stoppage in transitu: “ that the vendor has a right to stop goods sold by him, when he discovers the vendee to be insolvent, at any time while the goods are in transitu. That the transitus continues until the goods reach the place of destination, unless sooner terminated by the, act of the vendee. That a delivery to the vendee of the goods, or a part of them, or a delivery to his agent or to a Iona fide purchaser from him, terminates the right of the vendor of the goods to stop them.”
Not only do the general statements of the doctrine fall *524 short of sustaining the decision in Rogers v. Thomas, but, in several cases, where the question was involved, it was differently decided. Such, we think, was the case of Hays v Mouille, 14 Pa. St. 48, before noticed. There, it is evident, the insolvency existed at the time of the sale of the goods, and it was proved, not by any overt act, but by a comparison of the amount of liabilities with the amount of assets.
The decision in the case of Buckley v. Furness, 15 Wend. 137, appears to be directly opposed to that in Rogers v. Thomas. In Buckley v. Furness, the point was made that the vendor, at the time of the sale, knew the circumstances of the vendee, who was then insolvent. It was said by Bronson, J.: “The sale was no doubt absolute, whether the plaintiff knew that Titus was insolvent or not; and so are most sales, where the vendor afterward exercises the right of stoppage in transitu. The right of the vendor to resume possession of goods sold on credit, in case of the insolvency of the consignee, before they come to his hands, does not depend upon any condition, or other peculiarity in the contract of sale, but proceeds on the ground of an equitable lien. Still, it may be, and probably is true, that if the plaintiff sold the iron, with a full knowledge of the situation of the vendee, he could not afterward exercise the right of stoppage in transitu; but the argument is not borne out by the facts.” The judge then proceeds to show by a reference to the facts, that although the vendee was insolvent at the time of the sale, it was not known to the vendor, who, therefore, had the right to retake the goods. This case was cited by counsel, in Rogers v. Thomas, but was not noticed in the opinion of the court.
There are other cases in which the decision did not turn on the question of insolvency, the contest in this class of cases having generally been as to the termination of the transit; but where it appears either directly or by strong inference, that the insolvency existed at the time of sale. Such a case is Biggs v. Barry, 2 Curtis, 259, in which it clearly appears that the insolvency existed at the time of sale; but the case was given to the jury on the question, simply, whether the tran *525 sit had ended, without any reference to the time of insol vency.
In the cases of Stubbs v. Lund, 7 Mass. 453, and Ilsley v. Stubbs, 9 Mass. 45, what was regarded by the court as the sale of the goods, their shipment on order, was after the insolvency of the vendee, and yet the exercise of the right oi stoppage in transitu was sustained.
The point might have been made, and if sustained would have changed the decision in the case of Litt v. Cowley, 1 Holt. 338, 3 Eng. Com L., 122, as is shown by Waite, "J., in his dissenting opinion in the case of Rogers v. Thomas. It may not be conclusive against the correctness of a legal pro position, that it was not presented, when from the facts in volved it might have been. But when this has occurred in a number of cases, where it is to be supposed that both counsel and court are well informed as to the rules of law, it is a reasonable inference that the point was not made because it was deemed- untenable.
We have not been able to find, and our attention has not been called by counsel to any decision which sustains the restriction on the right of stoppage in transitu laid down in Rogers v. Thomas; but it has been adopted as a rule of law in several elementary works. It appears to be approved in 1 Parsons on Contracts, 476, 478, but that approbation is omitted in the work of the same author on Mercantile Law, and withdrawn, and a grave doubt substituted, in his more recent work on Maritime Law, 1 Yol. 369.
We are satisfied that the restriction can not be maintained either on principle or authority.
In accordance with the views which have been expressed, the judgment of the superior court of Cincinnati will be affirmed.
Judgment affirmed.
Suture, C.J., and Peck, Brinkerhoee and Scott, J J., concurred.